UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION AT CHARLOTTESVILLE

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| KATHY JEAN CAMPBELL, ) | Case Number 21-60078 |
| ) | |
| _____Debtors._____ ) | |
| ) | |
| JOHN P. FITZGERALD, III, ) | |
| Acting United States Trustee For Region Four, ) | |
| ) | |
| _____Movant,_____ ) | |
| ) | |
| *v.* ) | |
| ) | |
| KATHY JEAN CAMPBELL, ) | |
| ) | |
| _____Respondent._____ ) | |

## NOTICE OF HEARING

PLEASE TAKE NOTICE that the United States Trustee has filed a *Motion To Dismiss Case For Abuse* (the "Motion").  A preliminary hearing on the Motion will be held on July 15, 2021 at 10:00 a.m. before the Honorable Rebecca B. Connelly.

The preliminary hearing will be held via video on ZoomGov.  You may access the hearing using the following information:  Meeting ID - 160 533 7670; URL - https://vawb-uscourts-gov.zoomgov.com/j/1605337670.

If you have questions about the hearing on this Motion, please review the Court's website at http://www.vawb.uscourts.gov/.

**If you do not want the Court to grant the relief requested in the motion, then, pursuant to Local Rule 9013-1, you must file a response on or before 7 days prior to the preliminary hearing.  Absent a timely filed response, a proposed order will be tendered to the Court dismissing the case and the Court may treat the motion as conceded and enter the proposed order without the necessity of holding a hearing.**

Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

1

## MOTION TO DISMISS CASE FOR ABUSE

John P. Fitzgerald, III, Acting United States Trustee for Region Four (the "United States Trustee"), by counsel, moves for the entry of an order dismissing the above-referenced Debtor's case pursuant to § 707(b)(1) of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"). In support of this motion, the United States Trustee respectfully states as follows:

### JURISDICTION AND VENUE

1. Jurisdiction is proper pursuant to 28 U.S.C. §§ 157 and 1334. The statutory predicates for this motion are §§ 105(a), 707(b)(1) and (b)(3) of the Bankruptcy Code.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### BACKGROUND

4. Kathy Jean Campbell ("Ms. Campbell" or the "Debtor") is an individual who filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on January 20, 2021.

5. The petition states that the Debtor's debts are primarily consumer debts.

6. The case was converted to chapter 7 on the Debtor's request by Order entered on February 12, 2021.

7. Debtor filed her schedules, statement of financial affairs and related documents on February 16, 2021.

8. The Section 341 meeting of creditors in the Debtor's chapter 7 case was held on March 29, 2021.

9. The Debtor filed an Amended Schedule A/B and Schedule C on April 23, 2021.

10. The primary new information disclosed in the amended schedules was regarding two previously unscheduled assets: (1) owed but unpaid real estate commissions and (2) the Debtor's interest in an inheritance from her mother.

11. Owed but unpaid commissions were topics of questioning by a creditor at the chapter 7 Section 341 meeting.

12. The petition, schedules, and statements filed by the Debtor pursuant to § 521 of the Bankruptcy Code are incorporated by reference.

13. The United States Trustee has reviewed the Schedules, Statement of Financial Affairs and the related documents filed by the Debtor in this case, has listened to the recording of the Section 341 meeting, and has received and reviewed financial information from the Debtor.

14. The Debtor lives in Culpeper County, Virginia.

15. The Debtor does not own any real estate.

16. The Debtor is a Virginia licensed real estate broker.

17. The address listed on the Debtor's real estate licensing documents is the home address listed on her bankruptcy petition.

18. Debtor is or was the 100% owner of Settle Down Real Estate, LLC.

19. According to State Corporation Commission records, Settle Down Real Estate, LLC's corporate existence was terminated as of September 30, 2020 for failure to pay registration fees.

20. The Debtor's household consists of herself and her 13-year-old minor child.

21. The Debtor has two sources of income. She is a member of the Board of Supervisors of Culpeper County and receives a salary for that position. She also is the owner or former owner of Settle Down Real Estate, LLC and currently operates a sole proprietorship real

estate business under the names "Settle Down Real Estate," "Settle Down with Kathy Campbell" and perhaps other names. Based on information available to the United States Trustee, the Debtor's primary source of income is commissions payable to her for her work on real estate transactions as part of her real estate brokerage business.

22. The address listed on the Debtor's business Facebook page is the home address listed on her bankruptcy petition.

23. At the chapter 7 Section 341 meeting the Debtor testified that she rented an office space for her business and gave the same address for that office space as the home address listed on her bankruptcy petition.

24. As the 100% owner of Settle Down Real Estate, LLC and/or her sole proprietorship the Debtor is in sole charge of her real estate business.

25. For the purposes of Official Form 22A-1 (Official Forms 22A-1 and 22A-2 are collectively referred to as the "Means Test"), the Debtor has a household size of 2 persons, herself and her minor child.

26. From July 1, 2020 to December 31, 2020 is the applicable period for calculating the Debtor's current monthly income under § 707(b) of the Bankruptcy Code (the "CMI Period").

27. The applicable Median Family Income as defined in § 101(39A) of the Bankruptcy Code for her household size in the Debtor's case is $81,900.00 per annum.

28. The United States Trustee did not file a statement of presumed abuse under 11 U.S.C. § 704(b)(1) and, accordingly, the United States Trustee is not asserting a claim under 11 U.S.C. § 707(b)(2).

29. Debtor's schedules disclose two sources of income: 1) salary from per position on the Culpeper County Board of Supervisors, and; 2) income from the operation of her real estate business.

30. On Schedule I filed February 16, 2021, the Debtor discloses monthly gross income from her position on the Culpeper County Board of Supervisors on line 2 of $1,059.64. Also, on Schedule I filed February 16, 2021, the Debtor discloses net income from her real estate business on line 8a of $2,088.91.

31. The Debtor, through counsel, has provided counsel for the United States Trustee income and expense statements from July 1, 2020 through January 31, 2021 for her real estate business. This is one additional month (January of 2021) beyond the six-month CMI period (July 2020 through December 2020).

32. Counsel for the United States Trustee requested business income and expense statements for the Debtor's business for February and March of 2021 from counsel for the Debtor on April 15, 2021. Debtor's counsel responded on April 29, 2021 that those statements were being prepared by the Debtor's accountant and were not available. As of the date of this Motion, those business income and expense statements still have not been provided.

33. Based on the income and expense statements provided to the United States Trustee, during the CMI Period, the Debtor's real estate business had gross income of $151,540.37 and claimed total expenses of $135,388.19. That results in $12,533.43 in net income and an average of $2,088.91 in net income over that six months.

34. The net income of the Debtor's real estate business disclosed on Schedule I, line 8a is the average net income for the six-month CMI Period.

35. Reporting net business income on Schedule I, line 8a based solely on income and expenses from the CMI Period results in an inaccurate portrait of the Debtor's financial condition. Including the month after the close of the CMI Period substantially increases the Debtor's net income from her business.

36. During the seven-month period ending January 31, 2021 (the CMI Period plus January of 2021), based on the income and expense statements provided to the United States Trustee, the Debtor's business had gross income of $189,093.53 and claimed total expenses of $150,100.06. That results in $35,374.72 in net income and an average of $5,053.53 per month in net income over that seven months.

37. Adding the business income and expenses for January 2021 to the business income and expenses from the CMI Period increases the Debtor's monthly average net business income from $2,088.91 to $5,053.53. That is an increase of $2,964.62 per month.

38. The Debtor's business income and expense statements reveal a number of expenses that are unexplained, for the benefit of the Debtor personally, unnecessary, excessive, unreasonable, improper and/or not permitted by Internal Revenue Service rules.

39. The Debtor's seven months of business income and expense statements include certain average monthly payments that are unexplained as follows: $237.33 for "miscellaneous" and $724.08 for "money orders."

40. The Debtor's seven months of business income and expense statements include an average monthly payment of $74.06 for "personal."

41. The Debtor's seven months of business income and expense statements include an average monthly payment of $1,913.71 for rent at a condominium development in Culpeper called Water's Place.

42. The United States Trustee asserts that after an opportunity for discovery the evidence will likely show that the rent for Water's Place is being paid for commercial real estate that the Debtor and/or her business either does not use or does not need.

43. During the CMI Period Debtor's business made at least two one-time payments as follows: A) $15,223.89 in October 2020 for "Auto Purchase" and B) $2,050.00 in October 2020 for "Shed Purchase."

44. These two one-time payments served to increase the Debtor's business expenses and consequently reduce her average monthly net income from her business. In fact, removing these two one-time payments increases the Debtor's business' monthly net income by $2,467.70 per month to $7,521.23 per month, based on the seven months of business income and expense statements ($2,467.70 + $5,053.53 = $7,521.23).

45. The Debtor's seven months of business income and expense statements also include an average monthly payment of $2,835.71 for rent for the house in which she lives and from which she operates her business.

46. When the information from the seven months of business income and expense statements and Schedule J are combined, it is apparent that the Debtor is engaged in excessive spending in a number of categories as follows:

>A) Transportation – Total monthly spending - $2,320.43. Consists of $1,185.93 in monthly average automobile expenses from the income and expense statements, $1,040.00 from Schedule J, Line 12 and $94.50 in vehicle insurance from Schedule J, Line 15c;
>
>B) Country Club/Entertainment – Total monthly spending - $706.06. Consists of $656.06 in monthly average payments to a country club from the income and

7

    expense statements and $50.00 in entertainment expenses from Schedule J, Line 12;

C) Gifts – Total monthly spending of $339.90 based on monthly average expenses from the business income and expense statements;

D) Food and housekeeping supplies – Total monthly spending $1.170.17. Consists of $370.17 in monthly average meals and entertainment expenses from the income and expense statements and $800.00 food and housekeeping supplies from Schedule J, Line 7;

E) Repairs, renovations and maintenance – Total monthly spending of $2,726.12. Consists of $21.75 in monthly average repairs and maintenance expenses and $2,579.37 in monthly average repairs and renovations expenses, both from the business income and expense statements, and $125.00 in home maintenance, repair, etc. from Schedule J, Line 4c;

F) Telephone, internet and cable – Total monthly spending of $1,449.31. Consists of $613.47 in monthly average telephone expenses and $200.84 in monthly average internet expenses, both from the business income and expense statements, and $635.00 in telephone, internet and cable from Schedule J, Line 6c;

G) Utilities – Total monthly spending of $722.66 – Consists of $322.66 in monthly average utilities from the business income and expense statements, $325.00 in electricity, heat and gas from Schedule J, Line 6a and $75.00 in water, sewer and garbage from Schedule J, Line 6b.

47. The United States Trustee does not currently have sufficient information to determine whether the Debtor is including the same expenses on both on the business income and expense statements and on Schedule J. The United States Trustee intends to conduct discovery to determine if the Debtor is engaged in such "double counting" of expenses.

48. The Debtor, through counsel, has provided counsel for the United States Trustee bank statements for her personal and business accounts as follows:

| Name on Account | Bank | Last 4 Digits of Account No. | Dates of Statements Provided to US Trustee |
|---|---|---|---|
| Debtor | Oak View National Bank | 1950 | 7/20/20 to 4/20/21 |
| Settle Down Real Estate LLC | SunTrust | 5182 | 7/1/20 to 11/30/20 (account apparently closed on or about 11/27/20) |
| Settle Down Real Estate LLC | Sandy Spring Bank | 50-01 | 10/19/20 to 3/31/21 |

49. Based on a review of the Debtor's bank statements, both business and personal, the Debtor has and is engaged in excessive, unnecessary and unreasonable spending, both pre- and post-petition, including (but not limited to) the following:

| Date | Account | Amount Spent | Description | Comment |
|---|---|---|---|---|
| 12/17/20 | Sandy Spring Bank (Business) | $372.75 | The Picket Post, Fredericksburg, Virginia | Civil War artifact and relic store |
| 12/22/20 | Sandy Spring Bank (Business) | $405.10 | Le Monkey House, Culpeper, Virginia | Gift and apparel store |
| 12/24/20 | Sandy Spring Bank (Busines) | $278.94 | Pepperberries, Culpeper, Virginia | Gift and home décor store |
| 12/25/20 | Oak View (Personal) | $204.99 | ATM Withdrawal – Charles Town, West Virginia | Address matches that of the Hollywood Casino |

9

| | | | | |
|---|---|---|---|---|
| 12/25/20 | Oak View (Personal) | $204.99 | ATM Withdrawal – Charles Town, West Virginia | Address matches that of the Hollywood Casino |
| 12/26/20 | Oak View (Personal) | $50.00 | POS Debit – Ranson, West Virginia | Nature of expense unknown. Ranson, West Virginia borders the Hollywood Casino |
| 12/28/20 | Sandy Spring Bank (Business) | $200.00 | Star ATM Withdrawal – Charles Town, West Virginia | Address matches that of the Hollywood Casino |
| 1/8/21 | Sandy Spring Bank (Business) | $225.00 | Kirby's Prime Steak, Thackerville, Oklahoma | Located at the WinStar World Casino |
| 1/8/21 | Sandy Spring Bank (Business) | $170.53 | Cracker Barrel, Norman, Oklahoma | |
| 1/11/21 | Sandy Spring Bank (Business) | $235.88 | Merchant Purchase, Quapaw, Oklahoma | Located at the Downstream Casino Resort |
| 2/2/21 | Sandy Spring Bank (Business) | Four transactions totaling $282.06 | Dick's Sporting Goods | Location unclear |
| 2/4/21 | Sandy Spring Bank (Business) | $350.00 | Piedmont Steakhouse, Culpeper, Virginia | |
| 2/8/21 | Sandy Spring Bank (Business) | $150.53 | The Pampered Chef | |
| 2/8/21 | Sandy Spring Bank (Business) | $500.00 | Inn at Willow Grove, Orange, Virginia | Per its website – "a luxurious boutique hotel" with a "Forbes Travel Guide Four Star-rated restaurant." |
| 2/19/21 | Sandy Spring Bank (Business) | Two transactions totaling $300.00 | Grill 309, Culpeper, Virginia | |
| 2/23/21 | Sandy Spring Bank (Business) | $371.60 | The Pampered Chef | |
| 3/1/21 | Sandy Spring Bank (Business) | $1,124.97 | Travelocity | It is unclear exactly what this is for, but United States Trustee believes it to be the hotel expense for Debtor's trip to Las Vegas, Nevada |

|  |  |  |  |  |
|---|---|---|---|---|
|  |  |  |  | at the end of March, 2021. |
| 3/8/21 | Sandy Spring Bank (Business) | Four transactions totaling $436.26 | The Pampered Chef |  |
| 3/8/21 | Sandy Spring Bank (Business) | $280.20 | Shawns Smokehouse BBQ | Location unclear. Either Culpeper, Warrenton or Fredericksburg, Virginia |
| 3/30/21 | Sandy Spring Bank (Business) | $300.00 | ATM Withdrawal – Las Vegas, Nevada | Address matches that of the Paris Las Vegas Hotel and Casino[1] |
| 3/31/21 | Oak View (Personal) | Two transactions totaling $287.85 | Topgolf, Las Vegas, Nevada | Located at the MGM Grand Las Vegas Hotel & Casino. Per MGM's website the "Topgolf Experience" includes 4 levels, featuring live entertainment, five bars and 120 climate controlled "hitting bays." |
| 3/31/21 | Oak View (Personal) | $509.99 | ATM Withdrawal – Las Vegas, Nevada | Address matches that of the Paris Las Vegas Hotel and Casino |
| 4/1/21 | Oak View (Personal) | $125.85 | POS debit - Paris Las Vegas Casino, Las Vegas, Nevada |  |
| 4/15/21 | Oak View (Personal) | Two ATM withdrawals totaling $249.98 | ATM Withdrawals – Charles Town, West Virginia | Address matches that of the Hollywood Casino |
| 4/15/21 | Oak View (Personal) | $243.25 | ATM withdrawal -- Berryville, Virginia | Address matches that of a gas station located approximately 20 minutes from the Hollywood Casino |

---

[1] This withdrawal was made the day after the chapter 7 Section 341 meeting.

11

| 4/15/21 | Oak View (Personal) | $400.00 | ATM withdrawal -- Charles Town, West Virginia | Address matches that of a Sheetz located just outside the Hollywood Casino |

50. The unreasonable, unnecessary and excessive spending detailed above does not include all of Debtor's travel expenses. The Debtor's bank statements in the possession of the United States Trustee reflect that the Debtor spent $1,393.55 in airfare alone.

51. Based on a review of the Debtor's business income and expense statements and the bank statements, it does not appear that the Debtor maintains much, if any, separation between her business and personal finances.

52. For example, in addition to the transactions alleged above, the Sandy Spring Bank statements, in the name of the Debtor's LLC, reflect a payment in December of 2021 of over $500.00 to LabCorp, a payment in February of 2021 of over $2,800.00 to a dentist and a payment in March of 2021 of $39.99 to Ancestry.com.

53. The Debtor continues to use a bank account in the name of "Settle Down Real Estate LLC" despite the fact that that legal entity's existence was terminated in September of 2020.

54. The United States Trustee asserts that after an opportunity for discovery the evidence will likely show that the Debtor has improperly inflated her business expenses and, therefore, improperly decreased the net income from her business.

55. The United States Trustee asserts that after an opportunity for discovery the evidence will likely show that the Debtor has claimed business expenses not permitted by Internal Revenue Service rules.

56. The United States Trustee asserts that after an opportunity for discovery the evidence will likely show that had she not improperly inflated her business expenses and not

claimed business expenses not permitted by Internal Revenue Service rules, the Debtor's Median Family Income would have exceeded the applicable Median Family Income as defined in § 101(39A) of the Bankruptcy Code for her household size.

57. The Debtor filed Schedule E/F on February 16, 2021. Schedule E/F discloses $10,277.44 in priority debt, including $7,672.64 in tax debt and $2,604.80 in unpaid tolls.

58. Schedule E/F also discloses $138,575.55 in general unsecured debt, including $41,297.76 in unpaid judgments and $15,153.46 in credit card debt.

59. The Debtor is employed and earning a relatively high income, especially after improper business expenses are discounted and/or properly attributed.

60. Both prior to and immediately after the filing of this case the Debtor has engaged in excessive, unreasonable and unnecessary spending, including gambling, country club fees, expensive meals, stays at luxury hotels, travel, expensive and unnecessary entertainment, and purchases of expensive and unnecessary personal property.

61. Based on her income, her budget, her claimed business expenses and her actual spending habits, the Debtor could make substantial payments to her creditors whether in or out of bankruptcy by eliminating excessive, unreasonable and unnecessary expenses.

62. While it does appear that the Debtor filed bankruptcy due to creditor collection activity, the Debtor did not file bankruptcy because of sudden illness, calamity, disability or unemployment.

## BASIS FOR RELIEF

*Granting The Debtor A Discharge Would Be An Abuse Of Chapter 7 Of The Bankruptcy Code Pursuant to 11 U.S.C. § 707(b)(3).*

63. Section 707(b)(3) of the Bankruptcy Code states:

In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider—

(A) whether the debtor filed the petition in bad faith; or
(B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

64. The totality of the circumstances of the Debtor's financial situation demonstrates that it would be an abuse of the provisions of chapter 7 of the Bankruptcy Code for the Debtor to receive a chapter 7 discharge. By way of example and not limitation, the Debtor: (i) has the ability to fund a substantial distribution to the Debtor's general unsecured creditors; (ii) is claiming excessive and/or improper expenses on Schedule J; (iii) has the ability to repay a substantial portion of the scheduled unsecured creditors' claims in a chapter 13 plan by eliminating unreasonable, excessive and/or unnecessary expenses; (iv) is, given her financial circumstances, engaged in unreasonable, excessive and unnecessary spending, including gambling, country club fees, expensive meals, stays at luxury hotels, travel, entertainment, and purchases of personal property; (v) has a well-paying source of income; (vi) has claimed improper business expenses with the result, and perhaps the intent, of showing a lower net income than she actually has; (vii) has conflated her personal and business spending, with the result, and perhaps the intent, of obfuscating her true financial condition; (viii) likely, after removal of the improper, unreasonable, excessive and unnecessary business expenses, has an income that exceeds the Median Family Income applicable to her case; (ix) did not file this case because of any sudden illness, calamity, disability or unemployment; (x) has an unnecessary, excessive and unreasonable budget, including

14

her claimed business expenses; (xi) has on file Schedules, a statement of current income and has provided business income and expense statements do not reasonably and accurately reflect her true financial condition; (xi) did not file her petition in good faith; (xii) is seeking to use bankruptcy to take unfair advantage of her creditors. Viewed under the totality of the circumstances of the Debtor's financial situation, the Court should dismiss the Debtor's case unless she voluntarily converts her case to one under either chapter 11 or 13 of the Bankruptcy Code.

65. The United States Trustee reserves the right to alter or amend the allegations contained in this motion as more information becomes available.

WHEREFORE, the United States Trustee, by counsel, respectfully requests the entry of an order dismissing the Debtor's case pursuant to § 707(b)(1) of the Bankruptcy Code unless the Debtor voluntarily converts her case.

Date:  May 24, 2020                     Respectfully submitted,

                                        John P. Fitzgerald, Acting United
                                        States Trustee for Region Four

                                        By: /s/ B. Webb King

Office of The United States Trustee
B. Webb King, Trial Attorney
VSB # 47044
210 First Street, Suite 505
Roanoke, Virginia 24011
540-857-2838
webb.king@usdoj.gov

**CERTIFICATE OF SERVICE**

      I certify that on May 24, 2021, I electronically filed the foregoing with the United States Bankruptcy Court for the Western District of Virginia which caused electronic notifications of filing to be served on all registered users of the CM/ECF System that have appeared in this case, including counsel for the Debtor. On this same date, I mailed a copy by first class mail to:

| Kathy Jean Campbell<br>306 South East Street<br>Culpeper, Virginia 22701 | Ronald Aiani, Esq.<br>86 East Lee St.<br>Warrenton, Virginia 20186 |
|---|---|

      /s/ B. Webb King